# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION (AKRON)

| | | |
|---|---|---|
| DAVID LOWE<br>n/k/a Danielle Lowe<br>3941 State Rd., Lot 20<br>Cuyahoga Falls, OH 44223 | ) ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| B. & L. TRANSPORT, INC.<br>2447 US-62<br>Winesburg, OH 44690 | ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>B. & L. Transport, Inc.<br>P.O. Box 172<br>Walnut Creek, Ohio 44687 | ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff David Lowe (n/k/a Danielle Lowe), by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Lowe is a resident of the city of Cuyahoga Falls, Summit County, state of Ohio.

2. Lowe's first name is legally "David," but she is now known as "Danielle."

3. Defendant B. & L. TRANSPORT, INC. ("B&L"), is an Ohio-incorporated company located at 2447 US-62, Winesburg, OH 44690.

4. At all times referenced herein, B&L was Lowe's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e and Ohio R.C. §4112.01(A)(2).

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Lowe is alleging a federal law claim under Title VII.

6. This Court has supplemental jurisdiction over Bennett's state law claims pursuant to 28 U.S.C. § 1367, as they are so closely related to his federal law claims that they form part of the same case of controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(1) and/or (2).

## FACTS

8. Lowe is a former employee of B&L.

9. Lowe is a transwoman. She was assigned the male sex at birth and now identifies as a female. She was formally known as "David" Lowe, which is still her current, legal name, but now goes by "Danielle" Lowe.

10. Lowe is thus in a protected class for her sex/gender.

11. Lowe worked for B&L as a regional truck driver from late November 2019 until B&L terminated Lowe's employment on or about March 26, 2020.

12. Prior to her termination, Lowe assumed her previous persona as David Lowe.

13. However, immediately before (literally in the same conversation as) Lowe's termination, she gave notice of her trans* status to Defendant.

14. Jon Mast (president), immediately after learning of Lowe's gender identity, fired her.

15. This termination came within seconds of Lowe giving notice of her gender identity to B&L.

16. Lowe, then going under her "David" persona, first found the position with B&L through Craigslist.

17. Lowe's interview was a brief road test in November 2019 proctored by Shane (LNU) and another man (Lowe cannot recall his name). Lowe passed the test without significant issue.

18. From then on, Lowe's employment was overall quite positive.

19. Lowe began running similar routes each week around the region and was even given a preferable route after a few months.

20. Lowe viewed this better route akin to a promotion, though it did not come with any sort of pay raise or title change.

21. Things changed, however, on or about March 22, 2020. That day, as Lowe drove through Youngstown, OH on a regular route with heavier-than-usual traffic, she passed a cattle truck on the freeway.

22. Later, as Lowe drove down a hill on the freeway, the same cattle truck blew past her seemingly going approximately 90 mph in the 70-mph zone.

23. Notably, the cattle truck's load was not secure (it was full of cattle).

24. After driving behind the cattle truck for some time, traffic thinned, and Lowe and the cattle truck were almost the only ones on the freeway.

25. Soon after, Lowe was driving her semi in the right lane of the two-lane freeway.

26. The cattle truck then passed Lowe in the left lane. Immediately after passing Lowe (and with only about ten feet of clearance between the cattle truck and Lowe's bumper), the driver dangerously drove back into the right lane and tapped his brakes.

27. Lowe, knowing the danger of two large vehicles crashing on the freeway at high speeds, let off her accelerator to slow down.

28. The cattle truck driver slowed down far below the 70-mph limit. Lowe then pulled into the left lane to pass because of the slow-down.

29. Immediately after Lowe pulled left, the cattle truck driver did too, seemingly in an effort to cut her off and/or to cause a wreck.

30. Lowe pulled back to the right lane again and so did the cattle truck.

31. Lowe knew this person was trying to be a jerk and possibly even trying to injure her, and so knew she would need act to get away from him.

32. Lowe feigned a merge back into the left lane but stayed where she was.

33. The cattle truck driver swerved back into the left lane to cut her off again, so she kept driving in the right lane.

34. Once Lowe's truck and the cattle truck were side-by-side, the cattle truck driver began to merge back into the right lane again where Lowe was, forcing her onto the shoulder to avoid a collision.

35. Eventually, Lowe got just passed the cattle truck, the cattle truck moved back into the left lane and allowed her back onto the road.

36. Lowe got back into the right lane, passed the truck, and didn't see it again after. Luckily, there was no collision, no injuries, and no other problems after this point.

37. Roughly an hour and a half later, the police pulled Lowe over and accused Lowe of running the cattle truck off the road.

38. This did not happen, but evidently the driver had reported her for it.

39. The police inspected Lowe's truck and saw no evidence that she had been in a wreck or made any contact (because neither had happened).

40. Lowe was not cited at this time. Later, she was cited for moving violations in Clearfield County, PA. She gave notice to B&L as required per policy.

41. Over the next few days, Lowe made her way back home.

42. There were some issues with her truck, but she eventually made it back to B&L on or about March 24, 2020.

43. The following day, Nolan (LNU, HR) called Lowe and let her know that the Pennsylvania police were intending on moving forward with the charges against her.

44. Lowe completed her insurance paperwork as requested and required, then had a conversation with Mast.

45. After discussing what had happened (this was not the first notice of the situation to Mast), the conversation devolved into other things.

46. Mast commented that someone must have had road rage, and Lowe said it could not have been her because she takes medications to lower her testosterone as part of her transition as a transwoman.

47. Mast's face fell after hearing that Lowe was taking estrogen to transition.

48. Mast then terminated Lowe's employment citing the non-collision on March 22, 2020.

49. Lowe reiterate that nothing had happened that day except that the cattle truck driver was a jerk, and Mast said he could not keep her on the company's insurance because of the incident.

50. Lowe pushed back noting that the insurance company was not in any way involved as there was no collision or damage, but Mast just repeated himself and Lowe's termination stood.

51. Lowe's termination was an adverse employment action by Defendant.

52. Defendant's purported reason for Lowe's termination was pretext.

53. Lowe was discriminated against due to her sex/gender..

54. There was a causal connection between Lowe's protected class(es) and Defendant's adverse actions taken against Lowe.

55. As a result of Defendant's acts and omissions described herein, Lowe has suffered and continues to suffer damages.

**COUNT I: SEX/GENDER DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.**

56. Lowe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

57. Lowe is a member of a statutorily protected class based on her sex/gender under R.C. § 4112 et seq.

58. Defendant treated Lowe differently than other similarly situated employees based on her sex/gender.

59. Defendant discriminated against Lowe on the basis of her sex/gender throughout the end of her employment with the company.

60. Defendant terminated Lowe's employment.

61. Defendant's termination of Lowe was an adverse employment action against her.

62. Defendant's cited reason(s) for Lowe's termination are pretextual.

63. Defendant actually terminated Lowe because of her sex/gender.

64. Defendant violated R.C. § 4112 et seq. when it terminated Lowe's employment based on her sex/gender.

65. Defendant's discrimination against Lowe based on her sex/gender violates R.C. § 4112 et seq.

66. As a direct and proximate result of Defendant's conduct, Lowe suffered and will continue to suffer damages.

## COUNT II: SEX/GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

67. Lowe restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. Lowe is a member of a statutorily protected class based on her sex/gender under Title VII.

69. Defendant treated Lowe differently than other similarly situated employees based on her sex/gender.

70. Defendant discriminated against Lowe on the basis of her sex/gender throughout the end of her employment with the company.

71. Defendant terminated Lowe's employment.

72. Defendant's termination of Lowe was an adverse employment action against her.

73. Defendant's cited reason(s) for Lowe's termination are pretextual.

74. Defendant actually terminated Lowe because of her sex/gender.

75. Defendant violated Title VII when it terminated Lowe's employment based on her sex/gender.

76. Defendant's discrimination against Lowe based on her sex/gender violates Title VII.

77. As a direct and proximate result of Defendant's conduct, Lowe suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Lowe demands from Defendant the following:

a) Issue a permanent injunction:

    i. Requiring B&L to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) An award against Defendant for compensatory and monetary damages to compensate Lowe for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against Defendant in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Lowe's claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

>Respectfully submitted,
>
>*/s/ Matthew G. Bruce*
>Matthew Bruce (0083769)
>    Trial Attorney
>Evan R. McFarland (0096953)
>**THE SPITZ LAW FIRM, LLC**
>11260 Chester Road, Suite 825
>Cincinnati, Ohio 45246
>Phone: (216) 291-4744 x.173
>Fax:    (216) 291-5744
>Email: Evan.McFarland@SpitzLawFirm.com
>Email: Matthew.Bruce@spitzlawfirm.com
>
>Attorneys for Plaintiff Lowe

## JURY DEMAND

Plaintiff demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Matthew G. Bruce*
>Matthew G. Bruce (0083769)